IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| EDWIN R. JONAS III, and BLACKTAIL MOUNTAIN RANCH CO., L.L.C., a Nevada limited liability company,<br><br>Plaintiffs,<br><br>vs.<br><br>RONALD F. WATERMAN, ESQ., GOUGH, SHANAHAN, JOHNSON & WATERMAN, a professional limited liability partnership, and HONORABLE CHARLES B. McNEIL, a/k/a C.B McNEIL,<br><br>Defendants. | CV 13-16-M-DLC-JCL<br><br>FINDINGS & RECOMMENDATION |

Defendants Ronald Waterman, Esq. and Gough, Shanahan, Johnson & Waterman, PLLP, have moved for summary judgment on the legal malpractice claims advanced against them by pro se Plaintiff Edwin R. Jonas III ("Jonas"). For the reasons set forth below, their motion should be granted and this case

should be dismissed in its entirety.

I.  **Background**

The events giving rise Jonas's legal malpractice claims date back to May 2006, when a New Jersey superior court entered judgments against him for unpaid child support, alimony, attorneys fees, and other obligations following his divorce from Linda Jonas ("Linda").[1]  Dkt. 45-3, at 5-8.  Linda subsequently sought to have those judgments enforced in Montana pursuant to the Uniform Enforcement of Foreign Judgment Act, Mont. Code Ann. §§ 25-9-501 et seq.  On December 4, 2009, she filed a Notice of Filing Foreign Judgment in the Montana Twentieth Judicial District Court, Lake County, along with copies of the New Jersey judgments, which totaled $695,476.97, plus $147,205.35 in interest.  Dkt. 45-3.

Jonas retained Defendants Ronald Waterman ("Waterman") and the law firm of Gough, Shanahan, Johnson & Waterman, PLLP ("Gough Shanahan") to

---

[1] Current defense counsel Christy McCann filed a declaration in support of the motion for summary judgment and attached what she attests are "true and correct" copies of several state court orders and filings, along with two documents confirming Waterman's attorney-client relationship with Jonas.  Dkt. 45.  Jonas argues that the Court should not consider any of the documents attached to McCann's declaration because she does not have personal knowledge of the facts set forth in those documents.  But McCann does not claim to have personal knowledge of the underlying facts.  She has simply attested to the accuracy of the copies attached to her declaration, which is entirely appropriate.  Jonas's argument to the contrary is without merit.

represent him in defending against the registration and execution of the foreign judgments. Dkt. 45-2.

In December 2009, Linda filed a motion seeking to satisfy the New Jersey judgments with Jonas's interest in Blacktail Mountain Ranch Company, LLC ("Blacktail Mountain"). She sought a charging order, the appointment of a receiver, the foreclosure of Jonas's distributional interest in Blacktail Mountain, and the judicial dissolution, and winding up, of Blacktail Mountain. *Jonas v. Jonas*, 2013 WL 3810598 * 2 (Mont. July 23, 2013) (*Jonas III)*. Jonas opposed the motion on the ground that Linda had already received transfers of money and property sufficient to satisfy the New Jersey judgments. *Jonas III,* at ** 3-4.

On February 1, 2010, the court issued a writ of execution against Jonas in the amount of $1,091,391.21. *Jonas I*, 2010 WL 4527053 *1. Two days later, on February 3, 2010, the court issued a charging order and an order for the appointment of a receiver, foreclosure of the lien, and for the dissolution of Blacktail Mountain, with the proceeds being used to satisfy the foreign judgments. *Jonas I*, 2010 WL 4527053 *1. The court denied Jonas's subsequent motions for reconsideration because such motions are not allowed under Montana law, and because no supporting briefs had been filed. *Jonas I*, 2010 WL 4527053 *2. Jonas appealed the order denying his motions for reconsideration, and the

Montana Supreme Court affirmed. *Jonas I*, 2010 WL 4527053 *2. The Court agreed that Jonas's motions for reconsideration were procedurally improper, and also held he was barred by res judicata from relitigating his claim that the 2006 New Jersey judgments had already been satisfied. *Jonas I*, 2010 WL 4527053 *2.

The case was remanded and Jonas, through Waterman, filed a motion for relief from the 2006 New Jersey judgments pursuant to Mont. R. Civ. P. 60. Jonas again challenged the charging order on the ground that the New Jersey judgments had already been satisfied. The court denied the Rule 60 motion, and Jonas appealed. *Jonas II*, 2012 WL 1699951 *2. Once again, the Montana Supreme Court affirmed, explaining that Jonas was "precluded by the principles of res judicata from repeating his challenges to New Jersey's 2006 judgment in the courts of Montana." *Jonas II*, 2012 WL 169951 *2.

The case was remanded again, and Jonas moved under Rule 60 to vacate the February 3, 2010, charging and receivership orders. Dkt. 45-12, at 9-10. This time Jonas argues that the orders were entered ex parte, that the receiver was not statutorily eligible, and that the seizure and sale of Blacktail Mountain's assets violated Montana and Nevada law governing limited liability corporations. The court denied the motion based on the law of the case doctrine, and in October 2012, Jonas appealed to the Montana Supreme Court for a third time. Dkt. 45-11.

Waterman filed that appeal on Jonas's behalf, but withdrew as counsel of record in February 2013. Dkt. 45-13.

On July 23, 2013, the Montana Supreme Court affirmed the district court's order denying Jonas's motion to set aside the charging order and appointment of the receiver. The Court held that because Jonas "failed to avail himself of several opportunities to challenge the charging order and appointment of receiver on the grounds he now raises," he had waived his right to do so and the charging order had become "the law of the case, binding [Jonas] thereby." *Jonas III*, DA 12-0620 at 9.

In the meantime, Jonas filed his pro se complaint in this case on January 23, 2013 – approximately two weeks before Waterman withdrew as counsel in the state court case.[2] Dkt. 1. Jonas alleges that Waterman committed legal

---

[2] Jonas's complaint also identified Blacktail Mountain as a plaintiff and named the judge who presided over the state court action, Charles B. McNeil, as a defendant. Dkt. 1. The Court has since dismissed Blacktail Mountain because it was not represented by an attorney, and dismissed Judge McNeil based on the doctrine of judicial immunity. Dkt. 53. Jonas has filed alternative motions to amend that order of dismissal to either set forth the grounds necessary for an interlocutory appeal under 28 U.S.C. § 1292(b) or include a certification under Fed. R. Civ. P. 54(b). Dkts. 70 & 76. But because Waterman's motion for summary judgment should be granted for the reasons set forth below, thereby disposing of Jonas's remaining claims, there is no need for interlocutory relief and Jonas's alternative motions should be denied accordingly. In the event presiding Judge Dana L. Christensen denies Waterman's motion for summary judgment, it should be noted that Judge McNeil consents to Jonas's Rule 54(b) motion.

malpractice while defending against Linda's lawsuit to domesticate and enforce the New Jersey judgments in state court. Jonas has pled state law legal malpractice claims against Waterman individually and the Gough Shanahan law firm under a respondeat superior theory of liability.[3] Waterman and Gough Shanahan move for summary judgment on the ground that their alleged conduct did not cause Jonas any injury.[4]

## II. Summary Judgment Standards

Federal Rule of Civil Procedure 56(a) entitles a party to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A movant may satisfy this

---

Because there would be no just reason to delay an appeal of the Court's order dismissing Judge McNeil if Jonas's remaining claims survive, it would then be appropriate to grant Jonas's motion for Rule 54(b) certification to the extent it relates to Judge McNeil's dismissal.

[3] In May 2013, Jonas initiated a related action in this Court against Linda, her attorneys in the Montana state court action, the court-appointed receiver, and several agents of the receiver. *Edwin Jonas v. Linda Jonas et al.*, CV-13-90-M-DLC-JCL (Dkt. 1). There are several pending motions in that case that are address in an Order and Findings & Recommendation entered contemporaneously with those entered here.

[4] Waterman and Gough Shanahan also move for summary judgment as to Blacktail Mountain's legal malpractice claims on the ground that they did not owe the entity a duty of care. This portion of the summary judgment motion is moot in light of the fact that Blacktail Mountain has been dismissed and is no longer a party to this action.

burden where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 251 (1986). A party moving for summary judgment who does not have the burden of persuasion at trial, must produce evidence which either: (1) negates an essential element of the non-moving party's claim, or (2) shows that the non-moving party does not have enough evidence of an essential element to ultimately carry his burden at trial. *Nissan Fire & Marine Ins. Co. Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

Once the moving party has satisfied its burden, the non-moving party must go beyond the pleadings and designate by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986). A party opposing summary judgment must identify evidence establishing that a dispute as to a particular material fact is genuine. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opponent "must do more than simply show that there is some metaphysical doubt as to the material facts." *Id*.

"In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all

inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997), abrogated on other grounds as noted in *Shakur v. Schriro*, 514 F.3d 878, 884-85 (9th Cir. 2008).

**III.  Discussion**

The Montana Supreme Court has "consistently set forth the elements of a legal malpractice claim as follows: (1) the attorney owed the plaintiff a duty of care; (2) the attorney breached this duty by failure to use reasonable care and skill; (3) the plaintiff suffered an injury; and (4) the attorney's conduct was the proximate cause of the injury." *Labair v. Carey*, 291 P.3d 1160, 1164 (Mont. 2012). "[A]n attorney's negligence is the cause of the plaintiff's injury if there is an uninterrupted chain of events from the negligent act to the injury." *Labair*, 291 P.3d at 1164. Under this standard, "proof of causation is satisfied by proof that the attorney's negligent conduct was a cause-in-fact of the damage alleged, i.e., that the injury would not have occurred 'but for' that conduct." *Labair*, 291 P.3d at 1164.

Here, Jonas claims that Waterman committed legal malpractice while defending against Linda's underlying lawsuit to domesticate and enforce the New Jersey judgments in Montana. In particular, he alleges that when Waterman moved for reconsideration of the February 3, 2010, charging order, he breached

his duty of care by failing to file supporting briefs. Dkt. 1, at 4. Jonas also accuses Waterman of: (1) not moving promptly to vacate the charging order; (2) failing to include the include the charging and receivership orders in the notice of appeal; (3) not accurately advising him as to the holding in *Jonas I* and failing to properly analyze the holding in *Jonas I* while briefing the appeal in *Jonas II*; (4) not insisting that Linda, her attorney, and the court-appointed receiver comply with Montana's receivership statutes, (5) withdrawing a motion to stay; and (6) otherwise failing to adhere to the applicable standard of care. Dkt. 1, at 5-6. Jonas alleges it was because of Waterman's shortcomings that Linda prevailed in state court and was able to proceed with the acquisition and sale of Blacktail Mountain's assets, thereby causing him financial and emotional damages. Dkt. 1, at 7.

Waterman argues that Jonas's legal malpractice claim fails as a matter of law because he cannot establish the requisite causal link between the conduct he complains of and the damages alleged. Where, as here, a legal malpractice claim stems from underlying litigation and places the merits of that litigation directly at issue, the "suit within a suit" approach to analyzing causation applies. *See Richards v. Knuchel,* 115 P.3d 189, 192-93 (Mont. 2005). The appropriate inquiry in such a case is "what the outcome for the plaintiff would have been in the

underlying case if it had been [litigated] properly." *Labair*, 291 P.3d at 1166. *See also Richards*, 115 P.3d at 192-93. If the undisputed evidence establishes that the outcome of the state court case would have been the same, and Linda would have prevailed in her efforts to enforce the New Jersey judgments regardless of Waterman's alleged negligence, then Waterman's conduct cannot have caused Jonas any damages.

Jonas's primary complaint is that he lost in front of the Montana Supreme Court in *Jonas I* because Waterman made various procedural mistakes. According to Jonas, those mistakes included not filing supporting briefs, not moving promptly to vacate the charging order, and failing to include the charging and receivership orders in the notice of appeal. Dkt. 1, at 4-5. Notwithstanding Jonas's argument to the contrary, it is clear upon reading *Jonas I* that the Court would have reached the same result regardless of Waterman's mistakes.

At issue in *Jonas I* was whether the district court had abused its discretion by denying Jonas's motions for reconsideration of the February 3, 2010, charging order based on Jonas's failure to file any supporting briefs and because there is no such thing as a motion for reconsideration under Montana law. *Jonas I,* 2010 WL 4527053 *2. The Montana Supreme Court affirmed, and agreed that "[m]otions for reconsideration do not exist under Montana law." *Jonas I,* 2010 WL 4527053

*2.  The Court also noted it was not the first time that Jonas had "failed to support a motion with a brief." *Jonas I,* 2010 WL 4527053 *2.

While the Court thus affirmed on procedural grounds, it also affirmed on independent and alternative res judicata grounds.  It went on to address Jonas's claim that the 2006 New Jersey judgments had already been "satisfied by prejudgment transfers of money and property" and so should not have been enforced in Montana.  *Jonas I,* 2010 WL 4527053 *2.  The Court concluded that Jonas was barred by the doctrine of res judicata from relitigating that issue and thereby challenging the validity of New Jersey judgments.  *Jonas I,* 2010 WL 4527053 *2.  This alternative holding had nothing to do with any procedural errors on Waterman's part, which means that Jonas would have lost on res judicata grounds regardless of Waterman's procedural mistakes.

Jonas is nonetheless adamant that the Court's res judicata discussion was nothing more than dicta and insists that Waterman's mistakes caused the adverse outcome in *Jonas I.*  But the fact that Jonas disagrees with the Court's holding does not make it dicta.  Jonas's position is flatly contradicted by the text of the decision.  The Court expressly held that "[r]es judicata bars [Jonas's] claims in Montana." *Jonas I*, 2010 WL 4527053 *2.  The Court confirmed as much in *Jonas II*, when it explained that it had denied the "appeal and petition for

reconsideration" in *Jonas I* "on the basis of res judicata." *Jonas II*, 2012 WL 1699951 *2. It is clear that the Montana Supreme Court rejected Jonas's challenge in *Jonas I* on res judicata grounds, and that it would have reached the same result even if Waterman had not made any procedural mistakes.

The same can be said of the Court's decision in *Jonas II*. The question on that appeal was whether the district court had abused its discretion by denying Jonas's Rule 60 motion seeking relief from the New Jersey judgments based on res judicata and law of the case. *Jonas II*, 2012 WL 1699951 *1. The Court affirmed, unequivocally holding that Jonas was "precluded by principles of res judicata from repeating his challenges to New Jersey's 2006 Judgment in the courts of Montana. We refuse to indulge him further." *Jonas II*, 2012 WL 1699951 *2.

The real thrust of Jonas's argument in responding to the motion for summary judgment is that the holding in *Jonas II* was erroneous, and that Waterman should somehow be held responsible for that adverse outcome. But Jonas does not point to any evidence that Waterman's allegedly deficient representation caused the Court to rule as it did.

The closest Jonas comes to articulating a theory by which Waterman could be held responsible for the adverse outcome in *Jonas II* is to allege in his complaint that Waterman failed to point out while briefing the appeal in *Jonas II*

that the res judicata discussion in *Jonas I* was mere dicta. Dkt. 1, at 5. Jonas apparently claims this somehow led to what he characterizes as the erroneous holding in *Jonas II*. As discussed above, however, the res judicata discussion in *Jonas I* was not dicta. Jonas cannot be heard to complain that Waterman was somehow negligent by not making an untenable argument on appeal in *Jonas II*. None of the other conduct alleged in the complaint has anything even arguably to do with the Court's ruling in *Jonas II*.

Jonas simply believes the Court was wrong when it held that he is barred by principles of res judicata from challenging the New Jersey judgments here in Montana. Jonas is so vehement on this point that most of his summary judgment response brief is devoted to explaining why believes *Jonas II* was wrongly decided. When Jonas filed his summary judgment response brief, the Montana Supreme Court had not yet ruled on his most recent appeal challenging the charging and receivership orders. Jonas explained that he had raised the issue of res judicata again in his reply brief, thereby giving the Montana Supreme Court "the opportunity to correct their mistakes" in *Jonas II*. Dkt. 49, at 15. Jonas stated he was "patiently await[ing]" the Court's decision reversing itself on the res judicata issue. Dkt. 49, at 15.

The Court has since issued its decision, but it did not do as Jonas had hoped.

The Court affirmed the district court's order denying Jonas's motion to set aside the charging order and appointment of the receiver on the ground that they have become the law of the case. Until Jonas's third appeal, his efforts to set aside the charging order were based on his argument that the New Jersey judgments had already been satisfied, and so should not be enforced in Montana. In *Jonas III*, however, he argued that the charging order and order of receivership were entered ex parte, that the receiver was not statutorily eligible, and that the seizure and sale of Blacktail Mountain's assets violated Montana and Nevada law governing limited liability corporations. The Court held that Jonas was precluded by the law of the case doctrine from making those arguments. Notwithstanding Jonas's invitation, the Court did not revisit the res judicata issue it decided in *Jonas I* and *Jonas II*.

In both of those decisions, the Court made clear that Jonas was barred by principles of res judicata from challenging the validity of the New Jersey judgments, thereby allowing Linda to enforce those judgments and proceed with the acquisition and sale of Blacktail Mountain's assets under authority of the charging and receivership orders. It is not this Court's role to review the *Jonas* decisions and consider whether the Montana Supreme Court's application of the res judicata doctrine was correct.

The appropriate question here is not whether the Montana Supreme Court correctly decided that Jonas was barred by principles of res judicata from challenging the New Jersey judgments, but whether that outcome might have been different had Waterman not engaged in the conduct that Jonas claims was negligent. Jonas has not come forward with any evidence suggesting that, but for Waterman's alleged negligence, he might have obtained a different result. Jonas's efforts to set aside the charging order were based on his argument that the New Jersey judgments had already been satisfied and so should not be enforced in Montana. The Montana Supreme Court rejected that argument based on principles of res judicata – a legal doctrine that is completely unrelated to any of Waterman's allegedly negligent conduct. The undisputed evidence thus establishes that the outcome would have been the same, and Linda would have prevailed in her efforts to enforce the New Jersey judgments regardless of Waterman's alleged negligence.

Because the undisputed facts establish that Waterman's conduct did not cause the damages Jonas alleges, Waterman is entitled to summary judgment on Jonas's legal malpractice claim. This means that Jonas's legal malpractice claim against Gough Shanahan, which is premised solely on a theory of respondeat superior liability, also fails as a matter of law.

There is one final matter that must be addressed. Jonas has filed a motion for Rule 11 sanctions against Waterman and defense counsel J. Daniel Hoven and Christy McCann. Dkt. 80. Jonas argues they "knew or should have known" that the New Jersey judgments were not final and not on the merits, and that the doctrine of res judicata was thus inapplicable. Jonas maintains Waterman and his defense counsel should be subject to Rule 11 sanctions for knowingly filing a frivolous summary judgment motion. As discussed above, however, the motion was far from frivolous. Jonas is the one who has filed a frivolous motion – asking the Court to impose Rule 11 sanctions against counsel for pursuing a perfectly legitimate summary judgment motion. It would be an abuse of discretion to impose Rule 11 sanctions under the circumstances, and Jonas's motion is denied accordingly.

### IV. Conclusion

For the reasons set forth above,

IT IS RECOMMENDED that (1) Defendants' motion for summary judgment be GRANTED, and; (2) Plaintiff's alternative motions to amend the June 12, 2013, order of dismissal to either set forth the grounds necessary for an interlocutory appeal under 29 U.S.C. § 1292(b) or include a certification under Fed. R. Civ. P. 54(b) be DENIED as moot. Finally,

IT IS ORDERED that Jonas's motion for sanctions pursuant to Fed. R. Civ. P. 11 is DENIED.

DATED this 21st day of August, 2013

_____
Jeremiah C. Lynch
United States Magistrate Judge